*171
 
 Nash, J.
 

 The bill states, that, for several years prior to the filing of the bill, the plaintiff lived as a clerk with the defendant, Wheeler, who keeps an apothecary’s Shop in the town of Salisbury; that during that time he had accumulated property consisting in notes, bonds, and money, and other personal property, which, together with what he had before he went there, amounted to the sum of $5000; that the plaintiff occupied a room over the said defendant’s shop, and that the said defendant’s brother usually slept in the same room; that on the night of the 2d of October, A. D. 1842, the brother, by concert with the said defendant, and under pretence of being unwell, left his room, and that between the hours of 11 and 12 o’clock, while he was in bed, the defendant Wheeler came into his- room with a candle in one hand and a large knife in the other, and after putting down the window curtain came to his bed, and, putting the knife to his throat, charged him with having robbed him of large sums of money, and threatened to put him to instant death, if he did not immediately surrender to him all his money and notes and bonds ; that, under the fear and terror excited by his conduct and threats, he gave him up his keys, and the said Wheeler opened his trunk and took out all his money, bonds and notes, and a gold watch; that he threatened to take his life if he mentioned what had then taken place, promising to have a settlement with him the next day; that this settlement did not take place as promised by the defendant, in consequence of the dangerous illness-of one of his sisters; that he continued -to live with the defendant up to the 8th day of January, 1843, endeavoring from time to time to get a settlement. The bill further states, that in the month of March, 1843, the plaintiff and the defendant came to a settlement, and the defendant gave the complainant a receipt for the papers so taken, and a bond for $4869, payable one day after date, and the plaintiff gave the defendant, at the same time, a list of the same -bonds and notes and receipts for bonds, authorising him in said written list to collect them ; that after this transaction the plaintiff borrowed
 
 *172
 
 for the defendant of one Jacob Trexler $575, and for him from ^ie Branch of Cape Fear at Salisbury $500; that his being stript of all his means, was the reason why he did not sooner attempt to redress his wrongs, and that he did not disclose the transaction, except to one or two confidential friends, until the filing of the bill, and not to them fully. The bill concludes by praying an injunction to prevent the defendant from collecting the moneys due on the papers and from trading them off, and for a sequestration of the bonds, notes and receipts still in his hands, and for special and general relief. The bill also charges that the defendant is insol. vent. The writs prayed for were issued and executed.
 

 The answer admits that the complain ant lived with the defendant Wheeler, as a clerk, for the time set forth, denies that when he came there he had any property, avers that he received no wages for his services, that a short time before the transaction of the 2d of October, he had reason to believe that the complainant, during the time he had so lived with him, had been in the habit of robbing him; and that on the night of the 2d of October, as set forth, he went into the complainant’s room, which was over the shop, and charged him with the robbery, and demanded of him a restoration of what he had stolen, or he would expose him ; that the complainant confessed that he had robbed him and immediately arose from his bed, opened his trunk, and gave him a number of bonds, notes, and receipts, and money and a gold watch, denying that he used any violence or any threats other than that of exposure; that his reason for going into complainant’s room, at night and by himself, was to save the character of the complainant and the feelings of his friends; that with the same view he permitted him to remain in the shop, with an understanding that he would leave the State in the ensuing Spring; admits that the complainant borrowed the money for him as set forth, and that he and the complainant at the time specified came to a settlement, . when he gave the complainant a receipt for the papers, and the complainant gave him a list of the same papers, author-.
 
 *173
 
 izing him as assignee, to collect the moneys due, and stating that he had given the complainant full value for them. The answer admits that the defendant at the same time gave the complainant his bond for $4869, payable one day after date; and alleges that the complainant at the same time executed to him a receipt under his hand and seal for the amount of the said bond; that he gave the bond at the request of the plaintiff, to enable him to satisfy 'his friends, that he had that amount due him, and that all the papers were antedated to the 3d of October, 1842. The answer further admits that the defendant is in embarrassed circumstances.
 

 Upon the coming in of the answer, the injunction was dissolved and the sequestration discharged, by the presiding Judge, from which decree the plaintiff appealed to this court, and the case is before us now, on the simple question, whe-‘ ther that decree shall be affirmed or reversed.
 

 The case, in all its features, is a remarkable one. The plaintiff charges upon the defendant an act of violence, heretofore unheard of in this part of the country, and the1 defendant substantially admits it. He confesses that he en-' tered the plaintiff’s bed room, in the night, after he had retired to rest, charged upon him a crime, for which, if con-, victed, he would suffer an infamous punishment, and threatened him with public exposure unless he instantly surrendered the money which he alleged he had stolen from him. Under the fear and alarm excited by his conduct and threats, the plaintiff delivered all the property he had, except his clothes, consisting of the money, notes, bonds and receipts, as set forth in the bill. Upon this statement, and upon the unsupported allegations that the plaintiff had robbed him to the amount, nay, to double the amount of the mone}/-, and the evidences of debt so taken by him, the defendant asks the court to dissolve the injunction, remove the sequestration and return to him the property in contest, and enable him to realize its value, though he at the same time admits that he is in embarrassed circumstances. In the case of
 
 McNamara, Adm’r
 
 v
 
 Irwin, 2
 
 Dev. & Bat. Eq. 13, it is stated by the
 
 *174
 
 court to be the settled rule, that
 
 11
 
 when the equity of a bill ‘s not denied by the answer but a new equity is thereby in-trod need to repel or avoid it, the injunction will not be dissojve;j suc|1 an anSwer, but shall be continued to the hearing of the cause.” The plaintiff’s equity in this case is, that he has, through terror and alarm, induced, by the violence and threats of the defendant, parted with the property in dispute, and that the defendant is either insolvent or in failing circumstances. The terror and alarm, and the violence in part, are admitted, and that the defendant is embarrassed in his circumstances. The plaintiff’s equity is not answered, for though some of the acts of force and legal duress are denied, yet it is not pretended, that the brother was not induced to change his bed that night, so as to leave the plaintiff unprotected by a witness, nor that the defendant did not charge the plaintiff with the robbing, and threatened to proceed against him therefor, if he did not comply with the demand to give up all his effects. Upon the defendant’s own statement in the answer, there was at least a moral compulsion on the plaintiff, and duress in the view oí a Court of Equity. Such conduct cannot be justified at all, nor does it admit of any excuse, unless the defendant shall make it appear that the plaintiff actually committed the alleged depredations. That he may do by evidence upon the hearing. It could not be assumed as true upon the answer alone, nor can the defendant be allowed at this stage of the cause to repossess himself of the property in dispute upon the evidence alleged by him. The property is in the custody of the court; there it must, remain until it is properly ascertained who is entitled to it.
 

 It is the opinion of this court, that the
 
 interlocutory
 
 decree made in this cause below, dissolving the injunction and removing the sequestration was erroneous, and that the said injunction and sequestration ought to have been continued to the final hearing. A certificate to this effect must be transmitted to the Court of Equity for Rowan county, with infractions to proceed accordingly, and there must be judgment here against the appellee for costs.
 

 Per Curiam. .Ordered accordingly.